## ITEM CO., Limited, v. ANGELO CENTINEO, Inc., et al.

### No. 17471.

Court of Appeal of Louisiana. Orleans.
Dec. 16, 1940.

Rehearing Denied Jan. 13, 1941.

St. Clair Adams & Son, of New Orleans, for appellants.

Deutsch and Kerrigan and Alfred K. Hagedon, all of New Orleans, for appellee.

WESTERFIELD, Judge.

The Item Company, Limited, alleging that its delivery truck was damaged in an accident which, it is claimed, was caused by

the negligence of the driver of a truck and trailer belonging to Angelo Centineo, Inc., and, at the time of the accident operated by its employee, brought this suit against Angelo Centineo, Inc., and its insurance carrier, the Massachusetts Bonding and Insurance Company, for $170.07, the amount of damage to its truck plus $8.50 paid to its employee, the driver of the truck, as compensation insurance due to injuries sustained by him in the accident. The defendants denied that the driver of the truck and trailer was in any respect negligent.

There was judgment below in favor of plaintiff as prayed for and defendants have appealed.

The plaintiff's version of the accident is that while its truck was on the Mississippi River Bridge crossing from the west to the east bank of the river, at about 2:15 a. m., its driver signalled his intention to pass the Centineo truck, which was in front of him, by blowing his horn and blinking his lights and that as it reached a point opposite the trailer, the driver of the Centineo truck "abruptly and without any warning turned the said truck to the right in front of petitioner's driver and then to the left, causing the right side of the said trailer to strike the left rear of petitioner's said truck".

There were three eyewitnesses to the accident, the two drivers of the colliding vehicles and Jesse M. Sixkiller, who was a watchman on the bridge.

James Brundy, plaintiff's driver, testified that he gave the signal of his intention to pass the Centineo truck, on the right which was in compliance with the traffic regulations on the bridge; that when he drew abreast of the trailer, the Centineo truck turned towards the right or in his direction, causing the back end of the trailer to swerve out and strike his truck on its left rear fender.

John Martinez, the driver of the Centineo truck, denied that he had, at any time, swerved towards the passing truck of plaintiff and stated that while driving at about thirty miles per hour, which is five miles more than the permissive speed on the bridge, he suddenly heard the sound of skidding tires and a crash. His first impression was that some of the barrels with which his truck was loaded had fallen, but that when he stopped to ascertain the cause of the crash, he discovered the Item truck some distance back of him in a damaged condition; that he did not hear any horn or see any lights blink; that he noticed skidmarks on the roadway about sixteen feet long; that the roadway is eighteen feet wide divided by a black line; that the skidmarks were inside of the black line— that is to say, they encroached upon the left-hand side or his side of the roadway.

Jesse M. Sixkiller, the night watchman on the bridge, testified that he was about thirty feet from the scene of the accident; that he did not see the actual contact of the vehicles due to the fact that the girders on the bridge interfered with his view, however, he did see the Centineo truck which was on its proper side of the road; that after the accident he discovered a skidmark about fifteen or twenty feet long starting from the black line in the center of the roadway and extending over it, thus encroaching about a foot and a half on the left-hand side; that he examined the damage done by the accident and found that only a little paint had been removed from the rear right-hand corner of the trailer, whereas the Item Company truck was damaged considerably about the middle of the body towards the rear and the left rear fender. When asked whether the Centineo truck had moved over towards the wrong side of the road at the time of the collision or at any time just prior to the accident, he replied in the negative, saying "he was against the rail as close as he could get". At another point in his testimony he repeated the statement that the Centineo truck was against the rail, but when asked whether it was scraping the rail, answered that it was about "I judge three or four feet, two or three feet away".

The plaintiff points to the excessive speed of the Centineo truck as an indication that it was out of control. The excessive speed is admitted, but we do not believe it is of any consequence, for there is no evidence tending to show that the Centineo truck was not in perfect control. The mere fact that its speed was five miles over the limit or thirty miles per hour means nothing except that its driver was violating the traffic regulations. Plaintiff charges that the driver of the Centineo truck swerved suddenly towards the Item truck while it was in the act of passing. It has failed to prove this charge. The only disinterested witness in the case, Sixkiller, is very positive in his statement to the effect that the Centineo truck maintained its posi-

tion near the rail on the left side of the road and did not at the time of the accident swerve towards the passing truck. We are inclined to believe that the reverse of the situation is true and that Brundy, the driver of the Item truck, swerved towards the Centineo truck, for we find him saying that when the Centineo truck moved over towards him, he pulled over towards it because "I didn't want to be knocked in the river". (The Item truck was on the outside or river side of the bridge)

Our conclusion is that the plaintiff has failed to establish the facts upon which it predicates its charge of negligence and that, therefore, there can be no recovery, consequently, and for the reasons assigned it is ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed and it is now ordered that there be judgment herein dismissing plaintiff's suit.

Judgment reversed.